IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| SmileDirectClub, LLC, | ) |
| Petitioner, | ) Case No. |
| v. | ) |
| Selwyn Singer, | ) Related to Action Pending in the U.S. District Court of the Middle District of Tennessee, *Ciccio, et al. v. SmileDirectClub, LLC, et al.*, 3:19-cv-00845 |
| Respondent. | ) |

## MOTION TO COMPEL COMPLIANCE AND
## TO TRANSFER SUBPOENA OF SELWYN SINGER

Petitioner SmileDirectClub, LLC ("SDC"), by and through its undersigned counsel, moves the Court, under Federal Rule of Civil Procedure 45, to compel Respondent Selwyn Singer to comply with SDC's properly served subpoena and overrule Singer's objections.

Because the place of compliance is within the Southern District of Florida, SDC has filed its Motion with this Court. The subpoena is directly related to underlying litigation currently pending in the Middle District of Tennessee—*Ciccio, et al. v. SmileDirectClub, LLC, et al.*, Case No. 3:19-cv-00845, U.S. District Court for the Middle District of Tennessee. Indeed, that Court already reopened discovery for the limited purpose of allowing SDC to serve this subpoena, and is well-aware of the issues that this dispute presents.

As explained below, exceptional circumstances justify transferring these proceedings to the Middle District of Tennessee. Doing so will also advance the purposes of judicial efficiency and economy. Accordingly, SDC also moves this Court to transfer this Motion and any subsequent proceedings relating to this subpoena to the court of the underlying litigation, i.e., the Middle District of Tennessee.

## I. INTRODUCTION AND FACTUAL BACKGROUND

As with any subpoena, some background on the underlying litigation is necessary to explain the relevance of the documents sought. Here, the underlying litigation is a class-action lawsuit brought in the Middle District of Tennessee by a putative class of dentists and orthodontists (the "Provider Plaintiffs"). According to their complaint, SDC's advertising misled consumers into pursuing clear aligner therapy through SDC's teledentistry portal rather than from brick-and-mortar dental or orthodontic practices.

### A. Plaintiffs in the underlying litigation covered up Singer's role in recruiting named plaintiffs for class counsel.

The Middle District of Tennessee bifurcated discovery. The Provider Plaintiffs admitted in discovery that they could not identify any would-be patients that they lost to SDC (much less as a result of any of SDC's ads). Consequently, SDC sought information about what spurred the named plaintiffs to believe that they had claims and why they agreed to serve as class representatives. Those facts, of course, speak to Rule 23(a)(4)'s adequacy requirement. Regardless, Provider Plaintiffs did not produce relevant documents, including the correspondence described below. Instead, they chose to stonewall SDC at every turn.

Toward the end of class-certification discovery, one of the named plaintiffs, Dr. Arthur Kapit, testified that a colleague in his office, Dr. Michael Cohen, approached him about serving as a class representative in the *Ciccio* lawsuit. (*See* Exhibit A (M.D. Tenn. Case 3:19-cv-00845, Dkt. 382) at 2.) Provider Plaintiffs had not previously disclosed that Dr. Cohen had knowledge about the case or had discussed it with Dr. Kapit. (*Id.*) Nor did they produce the e-mail correspondence through which Dr. Michael Cohen informed Dr. Kapit of the case and solicited his participation. (*Id.* at 5.) Dr. Kapit also testified that he believed that Dr. Michael Cohen had learned of the lawsuit from his father, Dr. Robert Cohen. (*Id.* at 2.)

Just days after this deposition, and before the close of class-certification fact discovery, Defendants attempted to serve both Drs. Cohen with subpoenas. (*Id.*) The office staff for each doctor, however, refused to accept the documents on the doctors' behalf, although process servers ultimately left copies of the subpoenas at each doctor's respective office. (*Id.*)

Both Drs. Cohen sent identical e-mails to the *Ciccio* discovery Special Master, stating that they did not intend to comply with the subpoenas. (*Id.*) The Cohens eventually retained counsel,[1] spoke with SDC, and provided declarations regarding, and produced correspondence relevant to, their efforts to recruit Dr. Kapit as a named plaintiff. (*Id.* at 2–3.)

**B.  After SDC discovered Singer's role in recruiting at least one named plaintiff, the Middle District of Tennessee reopened discovery so SDC could subpoena Singer.**

The declarations and correspondence show that Singer was at the center of the effort to recruit Dr. Kapit. (*Id.* at 3.) Singer's e-mail address and LinkedIn profile both reflect that he is an employee of Palm Beach Investment Research Group, Inc. ("PBIRG")—an investment group affiliated with one of Provider Plaintiffs' lawyers. (*Id.* at 6.) On September 3, 2019, Singer e-mailed Dr. Robert Cohen, "we are looking for an orthodontist to work with us on a class action suit against SmileDirect." (Exhibit B (Sept. 3, 2019 E-mail from S. Singer to R. Cohen).) He further stated that "My boss is a fabulous successful class action attorney and has his own legal strategy for preventing this company from disrupting the livelihoods of the profession. The opportunity now is very favorable for a settlement as the company is about to go public." (*Id.*)

That boss is Rick Stone, one of Provider Plaintiffs' counsel. PBIRG is not a law firm; its website describes it as an investment group. (*See* http://www.pbirgi.com/ (last visited Oct. 11,

---

[1] While the Cohens originally were to be represented by Joseph Galardi (the same attorney who now represents Singer), they ultimately were represented by Jamie Wasserman—daughter to Dr. Robert Cohen and sister to Dr. Michael Cohen.

2022).) Michael Cohen's declaration also revealed that Rick Stone had instructed at least one of the Drs. Cohen on how to dodge service of SDC's subpoenas. (*See* Exhibit C (Declaration of Dr. Michael Cohen).)

Following these revelations, the *Ciccio* court ultimately reopened discovery so SDC could serve a subpoena on Singer seeking both documents and testimony. (*See* Ex. A at 8; *see also* Exhibit D (Subpoena to Selwyn Singer).)

### C. Plaintiffs in the underlying litigation unsuccessfully objected to the subpoena's scope, and now Singer echoes their rejected objections.

Even though Provider Plaintiffs' counsel did not represent Singer, they attempted to object to SDC's subpoena on grounds of scope and privilege. (*See* Exhibit E (Sept. 23, 2022 J. Adams Letter to M. Silverstein).) They suggested that the Special Master's Order itself narrowed the scope of permissible discovery from Singer, and they claimed that responsive documents were privileged. (*Id.*) The Special Master rejected that attempt, noting that his Order permitting the subpoena to Singer did not "limit the scope of Mr. Singer's deposition and/or the scope of any document requests served therewith . . . To the extent any documents are being withheld on the basis of privilege, Defendants [SDC, et al.] are entitled to receive a privilege log regarding those documents." (Exhibit F (Sept. 26, 2022 E-mail from S. Funk).) This communication from the Special Master served to overrule the attempted objections on grounds of scope and required a privilege log for any documents withheld on that basis.

Provider Plaintiffs informed SDC that Singer would likely be represented by Joseph Galardi, the same attorney with whom Provider Plaintiffs' counsel connected the Cohens, but whom the Cohens ultimately did not retain. After meeting and conferring by phone with Mr. Galardi, SDC received Singer's extensive objections to SDC's subpoena. (*See* Exhibit G (Singer's Responses and Objections to Defendants' Subpoena); *see also* Exhibit H (Declaration of Michael

D. Meuti ("Meuti Decl.") at ¶¶ 6–8.) These objections largely mirror the scope and privilege objections that Provider Plaintiffs had raised, but which the Special Master specifically denied and for which he required a privilege log, respectively. During additional meeting and conferring with Mr. Galardi, counsel for SDC made clear that many of Singer's scope objections to Request 1 could be resolved because SDC does not seek PBIRG's client files through that Request. (Meuti Decl. at ¶ 11.) Additionally, SDC agreed to narrow its Request No. 1 by accepting documents sufficient to show Singer's responsibilities at PBIRG, his reporting relationships with PBIRG, and his compensation from PBIRG. (Meuti Decl. at ¶ 12.) Singer's counsel maintained an objection to producing documents sufficient to show Singer's compensation from PBIRG in response to Request 1. Regarding Requests 2–4 and 7, he refused to withdraw his remaining objections regarding privilege and scope.

At the conclusion of this process, SDC is left with no other recourse than to respectfully move this Court to compel Singer to comply with SDC's subpoena.

The timeliness of Singer's response to this subpoena implicates deadlines in the underlying litigation. Additionally, the Middle District of Tennessee is deeply familiar with the underlying facts and has already resolved numerous discovery disputes—including disputes relating to these same issues. For these reasons, SDC also moves to transfer this motion to the Middle District of Tennessee.

## II. ARGUMENT

### A. The Court should compel Singer to comply with SDC's document subpoena.[2]

Courts considering claims of burden under Rule 45 "must consider at least six factors: (1) the relevance of the information requested; (2) the need of the party for the documents; (3) the

---

[2] To accommodate Singer's religious observances, the parties have agreed that Singer's deposition will take place on a mutually convenient date. Additionally, the parties agreed that the better

breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *In re Decompensacion Liquidacion*, No. 20-25212-MC-SCOLA/TORRES, 2021 U.S. Dist. LEXIS 110944, at *24–25 (S.D. Fla. May 20, 2021).

Here, each factor favors SDC. *First*, the underlying court has already ruled that the information sought is relevant, as explained further below. *Second*, without the requested information, the defendants in the underlying *Ciccio* case will be forced to rely on an incomplete factual landscape when opposing class certification. *Third*, the document requests in SDC's subpoena are narrowly tailored to seek information that Singer is in a unique position to provide. *Fourth*, the time period is necessarily narrow due to the subject matter of the requests. *Fifth*, SDC has specifically described the documents sought, and the meet-and-confer process between the parties has clarified any remaining questions. And *sixth*, despite opportunities to support any claimed burden associated with complying with this subpoena, Singer offers only his own say-so.

Singer has objected specifically to the first and sixth factors. SDC addresses those objections, as well as his privilege objections, below.

> 1. **SDC's subpoena seeks relevant documents that SDC needs for class-certification briefing**.

Evidence uncovered to date shows that Singer recruited at least one named plaintiff for his "boss," Rick Stone. SDC seeks documents sufficient to show Singer's business relationship with Stone and with PBIRG. It also seeks documents regarding other communications concerning SDC (including other contacts with potential class representatives) and communications that Singer—

---

course of action is for SDC to depose Singer only once, after the dispute over Singer's document production is resolved and his production is complete—rather than depose him, await resolution of the document dispute, and then potentially subject him to a second deposition. Accordingly, it is not currently possible to determine a date certain for his deposition.

a non-lawyer who already testified that he assists Stone in his "personal and business" capacities, rather than in a legal capacity—had with Provider Plaintiffs and their counsel in the underlying case.

The *Ciccio* court has already determined that these documents are relevant. SDC set forth its arguments regarding the relevance of these documents in its Memorandum in Support of Defendants' Motion to Reopen Fact Discovery For Limited Purpose. (*See* Exhibit I (M.D. Tenn. Case No. 3:19-cv-00845, Dkt. 367) at 5–7.) There, Defendants argued that Provider Plaintiffs must show at the class-certification stage that both the named plaintiffs and their counsel are adequate representatives of the class's interests. (*Id.* at 5 (citing FED. R. CIV. P. 23(a), (g).) Citing case law holding that "[s]olicitation of clients for the commencement or continuation of a class action is improper, sufficient to warrant denial of class action certification," Defendants successfully argued that discovery into how the named class representatives were recruited is relevant and appropriate. (*Id.* (citing *Meachum v. Outdoor World Corp.*, 654 N.Y.S.2d 240, 369 (1996); *Brown v. Tax Ease Lien Servicing*, No. 3:15-CV-208-CRS, 2017 U.S. Dist. LEXIS 232658 (W.D. Ky. Feb. 16, 2017)).)

After these issues were fully briefed, the Special Master granted, in part, Defendants' motion. (*See* Ex. A at 8.) In that Order, the Special Master held that "solicitation to some extent could be improper and this supports the reopening of discovery for this limited purpose." (*Id.* at 2.) He further noted that the Declaration Singer offered in an attempt to avoid further discovery "raises . . . far more questions than it answers." (*Id.* at 6.) The Special Master ruled that questions relating to Singer and Mr. Stone's communications regarding plaintiff solicitation deserve to be answered. (*Id.* at 7.) And although the Special Master did not allow Defendants to subpoena

PBIRG at that time, he welcomed them "to renew their request to subpoena records from PBIRG" if "Defendants learn more during the course of" discovery from Singer. (*Id.* at 8.)

When Provider Plaintiffs' counsel tried to limit the scope of this subpoena, the Special Master reiterated his holdings. In a communication with the parties via e-mail, he wrote:

> To be clear, my Order of September 15, 2022 (Doc. 382) was not intended to nor did it limit the scope of Mr. Singer's deposition and/or the scope of any document requests served therewith. Specifically, the Requests raised in Mr. Adam's [sic] letter of September 23, 2022, all appear to be within the permissible scope of discovery and should be responded to fully.

(Ex. F.) The objections laid out in Mr. Adams' September 23, 2022 letter mirror those set forth by Mr. Galardi now.[3] This Court should apply the same reasoning as that of the court in the underlying litigation, and deny Mr. Galardi's resurrection of Mr. Adams' objections. *See, e.g.*, *State Farm Mut. Auto Ins. Co. v. Maistrenko*, No. 19-MC-20850-SCOLA/TORRES, 2019 U.S. Dist. LEXIS 221150, at *10 (S.D. Fla. Dec. 20, 2019) (holding that documents were relevant in part because the underlying court refused to quash a previous subpoena).

### 2. SDC's subpoena does not impose an undue burden.

Singer cannot satisfy his evidentiary burden to show that the subpoena is too onerous for him to comply. In his responses and objections to SDC's subpoena, Singer claims that complying would be "unduly burdensome." (*See* Ex. G at 2.) Singer does not, however, substantiate this claim of burden.

An unadorned assertion of burden, however, cannot suffice. This Court recognizes that a party asserting "undue burden" under Rule 45 "cannot rely on a perfunctory assertion, but instead must show the manner and extent of the burden and the injurious consequences of the serving

---

[3] The similarities are unsurprising, as Mr. Galardi confirmed during a meet-and-confer call that he was in communication with Provider Plaintiffs' counsel both regarding communications to and from the Special Master and otherwise. (Meuti Decl. ¶ 15.)

party's insistence on compliance with the subpoena." *Century Comm'cns. of Fla., Inc. v. Bright House Network, LLC*, No. 09-81108-CIV-COHN/SELTZER, 2010 U.S. Dist. LEXIS 154305, at *6 (S.D. Fla. Aug. 2, 2010) (cleaned up). In *Century Communications*, the movants sought sanctions, contending that the serving parties had failed to avoid imposing an undue burden on movants, as the responding parties. *Id.* at *5–6. Movants asserted, offering no supporting evidence, that the time it would take them to properly respond to a subpoena for a 30(b)(6) deposition, including getting up to speed on relevant documents prior to being deposed, would be unduly burdensome. *Id.* at *7. Movants did not identify the magnitude of the records at issue, the length of time it would take to review those documents, or any associated expenses. *Id.* The *Century Communications* Court denied the sanctions sought based on this complete lack of support for the claim of burden, emphasizing that "a party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding to the subpoena." *Id.* at *7–8 (cleaned up).

Singer failed to support this assertion not only in his objections, but also during the meet-and-confer process. During the parties' October 13 call, Mr. Galardi was unable to quantify the amount of time Singer has spent searching for relevant documents. (Meuti Decl. at ¶ 14.) Mr. Galardi also refused to specify the number of documents that Singer has collected, and to state whether an ESI discovery vendor had been engaged. (*Id.*) In other words, the claims of burden lack any support.

Nor could Singer credibly support his burden claim. A reasonable set of search terms could identify responsive documents, and SDC has offered to meet and confer about those search terms to no avail. (*See* Ex. J (Sept. 27, 2022 E-mail from M. Silverstein to J. Galardi).) SDC's subpoena contains narrow document requests for clearly relevant information and Singer has offered only

boilerplate objections.  Under similar circumstances, the Court in *Decompensacion* ruled to compel compliance with the serving party's subpoena.  *Decompensacion*, at *26, *29.  The Court should rule consistently here and order Singer to comply with SDC's subpoena.

> **3. The documents that SDC seeks are not privileged, and if Singer contends otherwise, he must substantiate that claim by logging the documents**.

Singer's privilege claims flunk the straight-face test.  In his objections to the subpoena, Singer asserts attorney/client and work-product objections, contending that he "has provided assistance in the nature of paralegal and/or consulting services to Plaintiff's counsel in the Litigation, namely Richard Stone and his law firm." (*See* Ex. G at 5.)

That newfound job description contradicts how he holds himself out to the public.  Singer's LinkedIn profile contains extensive detail on each of the positions he has held over a decades-long career in corporate accounting.  It says nothing about any experience as a paralegal or otherwise assisting attorneys in providing legal counsel. (Meuti Decl. Exs. 1 and 2.)

It also contradicts Singer's prior sworn declaration.  When Provider Plaintiffs opposed SDC's request to reopen discovery so that SDC could subpoena Singer, he voluntarily offered a declaration. Under penalty of perjury, Singer stated that he works "in an administrative capacity" for PBIRG and assists Richard Stone—counsel for the Provider Plaintiffs—"with his personal business and financial matters." (Exhibit K (Declaration of Selwyn Singer) at ¶ 3).)  It says nothing about offering legal assistance, much less serving as a paralegal, or "provid[ing] assistance in the nature of paralegal and/or consulting services."  That omission speaks volumes.

Singer cannot wish himself into becoming a paralegal simply because it would now be convenient for him to be one.  He represented under oath to a federal court that the assistance he provides to Richard Stone was in Mr. Stone's capacity as the President of PBIRG—in other words, not his capacity with Richard L. Stone, PLLC—and related to "personal business and financial

matters." (*Id.*) The Court should not allow Singer to contradict a sworn statement so he can retroactively claim his communications were privileged. He cannot meet his burden, and the Court should overrule his objections on that basis.[4]

Even if Singer's newly crafted job description did not contravene his public statements and prior testimony, it still would not suffice to establish a privilege claim. The party asserting that a document or communication is protected from disclosure because it is privileged has the burden to demonstrate that the privilege applies. *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Attorneys, P.A.*, 519 F. Supp. 3d 1184, 1198 (S.D. Fla. 2021). "That burden is not, of course, discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *Id.* Yet ipse dixit is all that Singer's objections offer.

More telling is Singer's refusal to provide a privilege log, even though the Middle District of Tennessee has already held that SDC is entitled to receive one. Rule 45(e)(2) requires parties making a privilege claim to "describe the nature of withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Yet Singer refuses to provide information that would allow the Court to assess his privilege claims. If there were any merit at all to Singer's privilege claim, why would he refuse to provide this information?

Singer's purported excuse does not hold water. He says logging documents over which he claims privilege would be too burdensome. That is not an excuse. If it were, virtually every

---

[4] Even if Singer could establish work-product protection, the materials would remain discoverable under Rule 26(b)(3), since the information sought is otherwise discoverable, SDC has a substantial need for it (as the Middle District of Tennessee's prior order suggests, if not holds), and SDC cannot obtain this information or its substantial equivalent from other sources.

subpoena recipient could dodge compliance by claiming privilege, refusing to support that privilege, and then claiming that logging the "privileged" documents would be too onerous.

No wonder authority does not support that position. Indeed, the only authority that Singer offered is an unreported, quarter-century-old New York bankruptcy case, *In re Circle K Corp.*, Nos. 90-5052-PHX-GBN to 90-5075-PHX-GBN, 1996 WL 529399 (S.D.N.Y. May 30, 1996). That case does not hold that claims of burden excuse parties from providing a privilege log. Instead, it stands for the limited proposition that when a party objects to a subpoena's breadth, the party can await resolution of that objection before providing a privilege log.

Here, the Court should not allow such a delay. For one thing, Singer's privilege claims are facially untenable. For another, waiting to provide a privilege log will only further drag out these proceedings, jeopardizing the class-certification briefing schedule in the underlying litigation. The Court should not reward Singer's delay tactics—especially when Provider Plaintiffs' counsel could alleviate any burden upon Singer by themselves logging the documents over which they claim privilege. *See MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 619 (S.D. Fla. 2013) ("Immunity from production of work-product materials may be asserted by either the attorney or the client").

Singer does not and cannot meet his burden to show that his privilege objections are valid. The Court should overrule them. In the alternative, the Court should require Singer to produce, in advance of Singer's deposition, a privilege log for all documents he claims are protected from disclosure so that SDC may assess the validity of Singer's privilege claims.

**B.    The Court should transfer these proceedings to the Middle District of Tennessee.**

As the Court has likely surmised, the underlying litigation has been complex and hotly contested, and has involved a lengthy discovery period with numerous disputes between the

parties. The circumstances of this case beg for, if not require, transfer under Rule 45(f). This rule dictates that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." FED. R. CIV. P. 45(f). Singer's counsel has represented that he will not consent to transfer. That is immaterial, because exceptional circumstances exist and justify a transfer.

This Court's authority supports a transfer. For example, in *Hoog v. PetroQuest*, the Court found that exceptional circumstances warranted transferring subpoena-related proceedings back to the underlying court. 338 F.R.D. 515 (S.D. Fla. 2021). The Court noted that the underlying case had been pending for roughly five years and had "231 docket entries despite only being in the class certification stage." *Id.* at 518. Here, the *Ciccio* case has been pending for three years and has nearly 400 docket entries, despite reaching only the class-certification stage. Both *Hoog* and this case have complex histories and a "clear benefit to judicial economy and efficiency" if this Motion is transferred to the underlying court. *Id.* Transfer also avoids the potential for inconsistent rulings when "the issuing court has already ruled on issues presented by the motion." *Id.* at 517–18. Here, the Special Master has already twice addressed issues akin to those presented in this motion.

Another similarity between *Hoog* and this case is that transferring this Motion would present no real burden to counsel. In *Hoog* that was true because the subpoena respondent hired the same counsel as a party in the underlying litigation. *Id.* at 518. Here, although counsel for Provider Plaintiffs may not be representing Singer outright, Singer's counsel acknowledged that he has been communicating with Provider Plaintiffs' counsel. (Meuti Decl. ¶ 15.) And the case history suggests that he may well be taking instruction from them. After all, Provider Plaintiffs' counsel referred previously subpoenaed parties to the same lawyer now representing Singer, and

Singer's counsel lodged essentially the same scope objections that Provider Plaintiffs' counsel raised and the Special Master rejected. This overlap in representation would ensure that Singer suffered no undue burden in having this motion transferred to the underlying court.

What's more, Singer has already voluntarily participated in the underlying litigation. He testified via a declaration to support Provider Plaintiffs' unsuccessful opposition to SDC's motion to reopen discovery. That decision undercuts any objection to the Middle District of Tennessee's, or the Special Master's, jurisdiction. And insofar as Singer contends that litigating this motion in Tennessee would impose a burden, he is wrong. The Special Master has conducted hearings by Zoom—a practice that will spare both Singer and his counsel from incurring travel costs.

Other cases within the Southern District of Florida have been transferred when involving similarly exceptional circumstances. *See, e.g.*, *U.S. v. Roy*, Case No. 18-20898-MC-MOORE/SIMONTON, 2018 U.S. Dist. LEXIS 48401, *9 (S.D. Fla. Mar. 21, 2018) (granting motion to transfer, in part "because issues related to the taking of discovery from [the subpoena respondent] have already been briefed and argued in the Issuing Court."); *Walgreen Co. v. Wyeth, Inc.*, No. 19-MC-60417-CIV-ALTONAGA/MCALILEY, 2019 U.S. Dist. LEXIS 98026, at *8 (S.D. Fla. Mar. 26, 2019) (granting motion to transfer for exceptional circumstances of "highly complex litigation" with "voluminous discovery" managed by underlying court). The case here matches these exceptional circumstances: the underlying litigation is complex, long-pending, with numerous previous rulings regarding relevance, proportionality, and scope of permissible discovery. This subpoena is one inextricable piece of a much larger puzzle, the need for which is made clearer when viewed through the lens of the underlying court's familiarity with this case.

## III. CONCLUSION

For the foregoing reasons, SDC respectfully requests that the Court grant its motion to compel compliance with SDC's subpoena by overruling Singer's objections and requiring him to

produce documents responsive to Request No. 1 (as narrowed by SDC as indicated above), Request No. 2, Request No. 3, Request No. 4, and Request No. 7 by a date certain,[5] and to transfer this motion and any subsequent proceedings regarding this subpoena to the court of underlying litigation. In the alternative, if the Court is not inclined to overrule Singer's privilege objections, SDC requests that the Court require Singer to produce a privilege log for any documents he believes are privileged.

## RULE 7.1 CERTIFICATE

On October 13, 2022, the parties met and conferred regarding the subpoena issued to Singer, as well as Singer's responses and objections to the subpoena. Respondent does not consent to the relief sought.

Respectfully submitted,

*/s/ Alan D. Lash*
Alan D. Lash
Florida Bar No. 510904
Lash & Goldberg, LLP
100 S.E. 2nd Street, Suite 1200
Miami Tower
Miami, Florida 33131
Tel.: 305.347.4040
Fax: 305.347.4050
alash@lashgoldberg.com

Matthew Langley
Benesch, Friedlander, Coplan and Aronoff, LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
mlangley@beneschlaw.com

---

[5] To comply with Local Rule 26.1(g)(2), SDC attaches Exhibit L to indicate the specific items to be compelled, the specific objections, the grounds for the objections, and the reasons supporting the Motion as to each specific item.

*Counsel for Petitioner*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was served on the below via e-mail this 17th day of October 2022.

Joseph G. Galardi
Terence M. Mullen
Atherton Galardi Mullen & Reeder PLLC
1641 Worthington Road, Suite 100
West Palm Beach, Florida 33409
T: (561) 293-2530
F: (561) 293-2593
jgalardi@athertonlg.com
kendall@athertonlg.com

*Counsel for Respondent*

*/s/ Alan D. Lash*