# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **SmileDirectClub, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) Civil No.: 3:22-mc-00015 |
| | ) |
| v. | ) |
| | ) Judge Aleta A. Trauger |
| **Selwyn Singer,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

# Table of Contents

Table of Authorities ................................................................................................................... ii

I. Introduction ........................................................................................................................ 1

II. Factual Background ........................................................................................................... 2

    A. Discovery revealed that one of Plaintiffs' lawyers used Selwyn Singer as an intermediary to recruit Dr. Kapit as a plaintiff. ................................. 2

    B. The Court reopened discovery to permit testimony and documents from Singer and confirmed that SDC's subpoena to Singer was permissible. ................................................................................................................... 3

    C. Singer has fought tooth-and-nail to avoid complying with SDC's subpoena. ........................................................................................................................ 4

III. Argument ........................................................................................................................... 5

    A. Singer blew Rule 72's 14-day deadline for objecting to Magistrate Judge Holmes's order. ...................................................................................... 6

    B. Even if Rule 53 governed, Singer's objection is still untimely. ............................ 7

    C. Singer's motion fails on the merits. ........................................................................ 8

        1. Singer is a party. ........................................................................................ 9

        2. Singer evidently has the means to pay the Special Master's fees. ................................................................................................................. 10

        3. SDC's previous third-party fee agreements are irrelevant. ...................... 11

        4. If the Court is not inclined to make Singer pay his fair share of the Special Master's fees, it should order Plaintiffs to do so. ........................................................................................................................ 11

IV. Conclusion ....................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apponi v. Sunshine Biscuits, Inc.*,
   809 F.2d 1210 (6th Cir. 1987) ....................................................................................... 11, 12

*Duncan v. Minn. Life Ins. Co.*,
   845 Fed. Appx. 392 (6th Cir. 2021) ........................................................................................ 6

*Ohio Midland, Inc. v. Proctor*,
   No. 2:05-cv-1097, 2021 U.S. Dist. LEXIS 160454 (S.D. Ohio Aug. 25, 2021) ..................... 12

*Superior Prod. P'ship v. Gordon Auto Body Parts Co.*,
   784 F.3d 311 (6th Cir. 2015) ................................................................................................ 6, 7

**Other Authorities**

Fed. R. Civ. P. 53 .......................................................................................................... 1, 5, 7

Fed. R. Civ. P. 53(g) ............................................................................................................ 7

Fed. R. Civ. P. 53(g)(3) ...................................................................................................... 11

Fed. R. Civ. P. 72 ............................................................................................................. 1, 5

Fed. R. Civ. P. 72(a) .......................................................................................................... 6, 7

# RESPONSE IN OPPOSITION TO SINGER'S MOTION FOR CLARIFICATION OR, ALTERNATIVELY, FOR MODIFICATION OF ORDER REGARDING ALLOCATION OF THE SPECIAL MASTER'S FEES AND COSTS

SmileDirectClub, LLC ("SDC"), opposes Selwyn Singer's motion for clarification or, in the alternative, for modification of the order allocating responsibility for the Special Master's fees.

## I.  INTRODUCTION

A rose by any other name may smell as sweet, but a party cannot cure a tardy objection to a Magistrate Judge's order by calling that objection a "motion for clarification." That is what Singer did here, and that is just one reason his effort here is doomed to fail.

For months, Singer has fought tooth-and-nail to avoid complying with SDC's subpoena—a subpoena that the Special Master expressly authorized [*Ciccio* ECF #382 (9/15/2022 Order)] and the scope of which he expressly approved [*Singer* ECF #1-7 (Ex. F. to SDC's Mot. to Compel)]. Beyond lodging baseless objections, Singer objected to this Court's addressing them, contending that only the Southern District of Florida could address his concerns. After losing that attempt to thwart complying with the subpoena, he then maintained that while this Court might be able to address the subpoena, the Special Master could not. Now, having blown the deadline to object to the order referring his objections to the Special Master, Singer objects to paying the Special Master's fees, under the guise of seeking "clarification."

This objection is just another meritless roadblock that Singer, in conjunction with Plaintiffs, is interposing between SDC and the discovery that the Court has already specifically authorized. Adding insult to injury, Singer seeks to avoid the clear 14-day deadline for objections to Magistrate Judge Holmes's Order under Rule 72, by claiming that instead, it is Rule 53 that governs. [*Singer* ECF #36, Mot. at 4.] For Singer, this is a distinction without a difference. Under either Rule, Singer's Motion is untimely and unjustified. He has had sufficient notice of the

1

Special Master's jurisdiction over this dispute and has raised no reason why he should be exempt from paying his fair share of the fees that his baseless objections will create.

Further, the underlying facts show that Singer (whether prompted by Plaintiffs' counsel or otherwise) is the driving force behind any delay in resolving these issues. As such, SDC respectfully requests that the Court issue an Order clarifying that Singer is responsible for at least half of any of the Special Master's fees relating to Singer's own compliance with SDC's subpoena or, in the alternative, that Plaintiffs must reimburse Singer's share of the Special Master's fees.

## II. FACTUAL BACKGROUND

The Court is all too familiar with the background facts relating to discovery generally in this case. SDC will recount only those facts relating to the subpoena to Singer.

### A. Discovery revealed that one of Plaintiffs' lawyers used Selwyn Singer as an intermediary to recruit Dr. Kapit as a plaintiff.

Dr. Kapit (one of the Provider Plaintiffs) testified at his deposition that he did not seek legal counsel because he believed SDC had caused him harm, but instead, he learned of a contemplated lawsuit against SDC from a dentist working in the same office, Dr. Michael Cohen. Dr. Kapit testified that Dr. Michael Cohen, in turn, learned about the contemplated lawsuit from his father, Dr. Robert Cohen, who told Michael that the lawyers were looking for an orthodontist to work with them on the case. [*See Ciccio* ECF #367 at 1–2.]

SDC subpoenaed the Drs. Cohen, but their respective front-desk staff refused to accept the subpoenas, at the instruction of Rick Stone, counsel for the named Plaintiffs in *Ciccio*. [*Id.* at 2; *see Ciccio* ECF #367-3 ¶ 8.] Eventually, SDC's counsel interviewed the two Drs. Cohen, and each of them provided a declaration. Dr. Robert Cohen's declaration revealed that he had learned about the contemplated litigation against SDC from one of his patients, Selwyn Singer. [*Ciccio* ECF #367-4 ¶ 3.] Singer sent Robert an email asking him to refer an orthodontist or dentist to serve as

2

Case 3:22-mc-00015 Document 37 Filed 01/04/23 Page 5 of 18 PageID #: 71

a plaintiff in a contemplated class action against SDC that, he said, was primed for a quick settlement:

> Hi Rob,
>
> As discussed, we are looking for an orthodontist to work with us on a class action suit against SmileDirect. Several professional associations (Georgia Board of Dentistry, Board of Dental Examiners of Alabama) have already lodged complaints and law suits that the company is illegally practicing dentistry. The American Dental Association has also weighed in and come out against this "practice of do-it-yourself orthodontics because of the potential harm to patients. My boss is a fabulous successful class action attorney and has his own legal strategy for preventing this company from disrupting the livelihoods of the profession. The opportunity is now very favorable for a settlement as the company is about to go public and has just today registered its documents with the SEC.
>
> For the orthodontist that you can refer to us, it would be at a minimum a very interesting and informative call/lunch meeting. Let me know if you can put this together. As a dentist your son could also participate. Thanks.

[*Id.* at Ex. 1.]

Internet research revealed that Singer serves as Club Administrator for Palm Beach Investment Research Group, Inc. ("PBIRG"), an incorporated investment club founded and operated by Rick Stone.

### B. The Court reopened discovery to permit testimony and documents from Singer and confirmed that SDC's subpoena to Singer was permissible.

SDC first served Singer with a subpoena on June 27, 2022. [*Singer* ECF #7-6.] Since fact discovery had closed, Plaintiffs objected, and at a July 1 hearing, the Special Master ruled by email that SDC needed to seek leave to serve the subpoena. [Ex. A (7/1/22 Funk email).] Singer sent SDC an email on July 5, 2022, specifically stating that per the Special Master's ruling, Singer would not respond to the subpoena. [*Singer* ECF #14-3 (7/5/22 Singer email).]

SDC moved to reopen discovery to permit it to serve document and deposition subpoenas on Singer and on PBIRG. [*Ciccio* ECF #367 at 3-4.] Plaintiffs opposed that motion to reopen. [*Ciccio* ECF # 370.] On September 15, 2022, the Court (through the Special Master) granted in part SDC's motion, permitting it to seek documents and testimony from Selwyn Singer. [*Ciccio* ECF #382.] The Order placed no limits on the scope of permissible discovery.

SDC subpoenaed Singer again. [*Singer* ECF # 1-5.] The Plaintiffs' lawyers objected to that subpoena by letter, even though they did not and do not represent Singer, contending that the subpoena addressed topics that the Special Master's Order did not contemplate. [*Singer* ECF #1-6.] Counsel met, conferred, and presented that objection to the Special Master, who ruled by email on September 27 that his September 15 Order "was not intended to nor did it limit the scope of Mr. Singer's deposition and/or the scope of any document requests served therewith." [*Singer* ECF #1-7.] The Special Master also ruled that the requests to which Plaintiffs objected "all appear to be within the permissible scope of discovery and should be responded to fully" and that if any documents were withheld on privilege grounds, "Defendants are entitled to receive a privilege log regarding those documents." [*Id.*]

### C. Singer has fought tooth-and-nail to avoid complying with SDC's subpoena.

On September 30, counsel for SDC spoke with Singer's lawyer by telephone.[1] Singer's lawyer indicated that he was aware of Plaintiffs' objection and the Special Master's email overruling that objection. [*Singer* ECF #1-9 ¶ 6.] He said that he needed additional time to get up to speed before he could discuss the subpoena in greater detail. A few days later, Singer's lawyer said that Singer objected to the Special Master's jurisdiction and to this Court's jurisdiction, so any objections would need to be resolved by the U.S. District Court for the Southern District of Florida. [*Id.* at ¶ 7.]

SDC moved to enforce the subpoena in the Southern District of Florida and to transfer proceedings to this Court. [*Singer* ECF #1.] Singer opposed, contending that (a) SDC's subpoena

---

[1] Not coincidentally, Singer is represented by Joseph Galardi, the same attorney to whom Rick Stone had initially referred the Drs. Cohen before they opted to hire different counsel.

was overbroad, notwithstanding the Special Master's express ruling to the contrary, and (b) most[2]

of the documents sought were privileged because Singer—an accountant neither employed nor

paid by any law practice—was serving as a paralegal. [*Singer* ECF #7.] Singer also objected to

providing a privilege log, contending that doing so would be too burdensome. [*Id.* at 13.] On

November 10, the Southern District of Florida transferred the case without addressing the merits

of SDC's motion to compel. [*Singer* ECF #20.]

After this proceeding landed on Judge Crenshaw's docket, SDC filed a notice of related

case [*Singer* ECF #26], and the case was reassigned to Judge Trauger on November 28 [*Singer*

ECF #27]. The next day, Judge Trauger referred the matter to Magistrate Judge Holmes and

Special Master Sam Funk [*Singer* ECF #30], and on December 5, Magistrate Judge Holmes

referred the matter to the Special Master for resolution [*Singer* ECF #32.]

Singer filed nothing on the docket within Rule 72's two-week deadline for objecting to a

magistrate judge's order on a nondispositive matter. After blowing that deadline, he filed his

objection, captioned as a "Motion for Clarification, or Alternatively, for Modification of Order

Regarding Allocation of the Special Master's Fees and Costs." [*Singer* ECF #36.]

### III. ARGUMENT

Even though the order referring SDC's motion to enforce was issued by Magistrate Judge

Holmes, Singer contends that Rule 72 does not govern. Singer is wrong, but being right would

not help him. Under either Rule 72 or Rule 53, Singer's motion is untimely. What is more,

Singer's attempt to avoid paying his share of the Special Master's costs fails on the merits.

---

[2] As of this filing, Singer has produced a meager nine or ten documents (depending on how Dr. Kapit's twice-produced resume is counted). Singer's privilege log (provided on December 16) lists 79 documents.

5

### A. **Singer blew Rule 72's 14-day deadline for objecting to Magistrate Judge Holmes's order.**

Singer's motion is untimely. Rule 72(a) governs the timeline for objecting to a magistrate judge's order on a nondispositive matter: "A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to." Here, Magistrate Judge Holmes issued the operative order on December 5. That order incorporated by reference "the procedures and provisions regarding the Special Master's appointment, duties, and rulings" from the *Ciccio* action. [*Singer* ECF #32.] Singer acknowledges as much. [*Singer* ECF #36, Mot. at 3.] Among those policies and provisions is that "[t]he cost of the Special Master's compensation . . . will be split equally amongst the parties, subject to any reallocation by the Court." [*Ciccio* ECF #168 ¶ 12.] Singer acknowledges that, too. [*Singer* ECF #36, Mot. at 3.] Magistrate Judge Holmes's referral order expressly cross-referenced the *Ciccio* docket entry containing that provision.

Singer had 14 days to object to Magistrate Judge Holmes's referral order, but he neglected to do so. He has thus waived any objection. *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 321 (6th Cir. 2015) (holding a party waived its right to appeal an issue when it did not object to the magistrate judge's clear order within the 14-day window); *see also Duncan v. Minn. Life Ins. Co.*, 845 Fed. Appx. 392, 398 (6th Cir. 2021) ("If a party disagrees with a magistrate [judge]'s order, the party must serve and file objections to the order within 14 days after being served a copy.") (cleaned up).

Singer does not claim any good cause for his tardiness, nor could he. The ECF notice of Magistrate Judge Holmes's December 5 Order includes Singer's counsel on the distribution list. After the Special Master informed the parties that any objection would need to be filed with the Court, Singer's counsel stated on December 12 that he intended to object "within the next day or

6

so." [Ex. B (Galardi 12/12/22 email).] However, he opted not to do so, and thus waived any objections to Magistrate Judge Holmes's December 5 Order.

Captioning his objection as a motion seeking clarification or modification cannot cure that waiver. That gambit flouts Rule 72(a)'s express text stating, "A party may not assign as error a defect in the order not timely objected to." Further, it insults the rule's integrity. The 14-day deadline would be no deadline at all if a party could skirt it by captioning his objection as a motion for "clarification," "modification," "amendment," or any other appellation. *See Superior Prod. P'ship*, 784 F.3d at 321 ("it would be inappropriate to permit [a party] to sidestep the 2008 order merely by filing a similar motion and forcing the district court to respond anew.") Singer's motion is untimely under Rule 72(a).

### B. Even if Rule 53 governed, Singer's objection is still untimely.

To dodge Rule 72(a)'s plain 14-day deadline, Singer tries another tack. He contends that even though Magistrate Judge Holmes's order referred the dispute to the Special Master, Rule 53(g) should govern. He is wrong, but no matter—Singer's objection is untimely under Rule 53's standard, too.

Singer flunks Rule 53's reasonable-time standard. In an email to Special Master Funk, Singer's lawyer said that Rule 53 requires that objections be made within "a reasonable time." [Ex. B (Galardi 12/21/22 email).] But he never explained how his tardy motion complies with that standard, and no wonder: it does not. Singer knew in July that the Special Master was overseeing discovery in the *Ciccio* case, and indeed, he relied upon the Special Master's July 1 email order in refusing to respond to SDC's first subpoena. [*Singer* ECF #14-3.] In SDC's counsel's September 30 conversation with Singer's lawyer, SDC conveyed its desire to have the Special Master resolve any issues regarding the subpoena, and Singer's counsel said that he was aware of the Special Master's review of SDC's subpoena to Singer. And after the Southern District of Florida

7

transferred the case to this Court, SDC's notice of related case put Singer on further notice that SDC sought to have the same judicial officers presiding over *Ciccio* preside over the subpoena to Singer. All of those events put Singer on notice that if he wished to object to the Special Master's jurisdiction—or his fees—the time was afoot.

If that notice were not enough, two additional events triggered Singer's duty to object. Judge Trauger's November 29 Order referred the miscellaneous proceeding, to which Singer is a party, to Magistrate Judge Holmes and Special Master Samuel P. Funk. And as noted above, Magistrate Judge Holmes referred the matter for decision to the Special Master alone on December 5. Yet Singer waited until December 21—after objections to Magistrate Judge Holmes's referral order were due—to object. That is not objecting within a reasonable time.

For the same reasons, Singer's claim that he lacked "notice and an opportunity to be heard" [*Singer* ECF #36, Mot. at 4–5] cannot be taken seriously. He had notice since at least September and probably since July. And at least five events triggered his opportunity to be heard:

- SmileDirect's November 18 Notice of Related Case;
- The Court's November 28 Order reassigning the case;
- Judge Trauger's November 29 referral to Magistrate Judge Holmes and the Special Master;
- Magistrate Judge Holmes's December 5 referral to the Special Master; and
- The Special Master's specifically informing the parties on December 9 that any objections to the referral would need to be formally filed.

Simply put, Singer had plenty of opportunities to be heard, but he chose to ignore all of them.

**C.     Singer's motion fails on the merits.**

Even if Singer's motion were timely (it is not), it would still fail. Singer erroneously claims that he cannot be responsible for any portion of the Special Master's fees because Singer is not a

party. Further, Singer's actions contradict his assertion that he lacks the means to pay his share of the Special Master's fees.

1. **<u>Singer is a party.</u>**

Singer's assertion that he is not a party fails twice. First, it ignores that he *is* a party to the special proceeding. The caption of his motion shows as much:

<pre>
            IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF TENNESSEE
                       NASHVILLE DIVISION

SMILEDIRECTCLUB, LLC,           )
                                )   Civil Action No.: 3:22-mc-00015
          Plaintiff,            )   District Judge Aleta A. Trauger
                                )
     v.                         )
                                )
SELWYN SINGER,                  )
                                )
          Defendant.            )

       SINGER'S MOTION FOR CLARIFICATION OR, ALTERNATIVELY,
         FOR MODIFICATION OF ORDER REGARDING ALLOCATION
              OF THE SPECIAL MASTER'S FEES AND COSTS
</pre>

Instead, Singer claims that he is not a party to the underlying *Ciccio* action. Singer never explains why the *Ciccio* matter is the relevant one to consider. Regardless, even if it were, Singer's privilege claims contradict the "not a party" argument that he asserts here.

Singer has refused to comply with SDC's subpoena because, he claims, his communications related to SDC occurred within his capacity as a "paralegal" or "investigator" to the *Ciccio* Plaintiffs' counsel. SDC disputes those privilege claims for various reasons, including: (a) Plaintiffs did not claim privilege over any of Singer's communications in either their privilege log or in their opposition to SDC's motion to reopen discovery; (b) Singer holds himself out to the public as a corporate accountant, not as a paralegal, investigator, or other provider of legal services; (c) Singer is neither employed nor compensated by any law practice; and (d) Singer evidently has no paralegal certifications or training. [*Singer* ECF #1 at 10–11, #14 at 2–5.] What is more, Singer's declaration to this Court (i) did not suggest that he provides legal services, but instead

9

said that he works "in administrative capacity" for PBIRG and assists Rick Stone "with his personal business and financial matters," and (ii) stated that Rick Stone did not direct him to email Dr. Cohen. [*Ciccio* ECF #370-1 ¶¶ 3, 9.]

Regardless of the merits of that dispute, the fact remains that Singer's entire basis for his assertion of privilege is that he was working closely with and directed by counsel for named Plaintiffs in the *Ciccio* action. Put differently, Singer's rationalization for avoiding SDC's subpoena is that he is too closely aligned with the *Ciccio* Plaintiffs to comply—a position fundamentally at odds with the "not a party" argument through which he tries to avoid paying the Special Master's fees.

### 2. Singer evidently has the means to pay the Special Master's fees.

Singer's next Hail-Mary to avoid paying the Special Master's fees is his assertion that he has "limited means." [*Singer* ECF #36, Mot. at 5.] SDC is not in a position to comment on the specifics of Singer's personal finances—especially because Singer offers no evidence supporting his bare assertion of "limited means." But Singer's actions, apparent to any observer, contradict that assertion.

Upon receiving SDC's subpoena, Singer could have complied. Instead, he hired a lawyer. He could have agreed to produce documents that the Special Master already held were relevant and within the scope of SDC's subpoena. Instead, he instructed that lawyer to lodge eight pages of objections. Singer could have consented to transferring the matter to this Court, which is intimately familiar with the underlying dispute. Instead, he chose to fight to keep the matter in Florida. After the case returned to this Court and was referred to the Special Master for disposition, he could have aided in the matter's speedy resolution by agreeing to pay the Special Master's fees.

Instead, he chose to incur *more* legal fees fighting to avoid paying the Special Master's fees, which will almost certainly be modest by comparison.[3]

Perhaps Singer is not a man of modest means, which explains why he is able to pay a lawyer to fight tooth-and-nail to avoid complying with SDC's subpoena. Or perhaps someone other than Singer is financing these obstructionist efforts. Regardless of the explanation, the fact remains that Singer has the financial wherewithal to pay a lawyer to pursue his baseless objections. He must therefore have the means to pay the Special Master's fees, too.

### 3. SDC's previous third-party fee agreements are irrelevant.

Singer also suggests that because SDC agreed to pay Align's portion of the Special Master's fees in a previous dispute, it should do likewise here. Not so.

Singer never explains why SDC's agreement with Align is relevant here, and no wonder: Singer's situation is nothing like the previous one. Align never fabricated a privilege claim, contending that it was a "paralegal" to the *Ciccio* Plaintiffs' lawyers. Instead, Align was a true third party. Further, Align's document production, and thereby its related burden in review and production of those documents, dwarfs Singer's. In sum, the agreement that SDC reached with a different party, concerning a different subpoena, in a different phase of the case says nothing about whether Singer should pay his fair share of the Special Master's fees.

### 4. If the Court is not inclined to make Singer pay his fair share of the Special Master's fees, it should order Plaintiffs to do so.

"The district court has broad discretion to determine which of the parties to charge, and the district court's decision will not be disturbed absent an abuse of that discretion." *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1220 (6th Cir. 1987) (citation omitted). In dividing the

---

[3] This pattern of obstructionism also shows that Rule 53(g)(3)'s extent-of-responsibility factor militates in favor of Singer's paying his fair share—if not the Special Master's entire fee.

11

Special Master's fees, the court may charge that compensation to a single party or apportion it between parties. *Id.*

The factors a court must consider when allocating a Special Master's fees are: (1) the nature and amount in controversy; (2) the parties' means; (3) and the extent to which any party is more responsible than other parties for the matter being before the Special Master. *Ohio Midland, Inc. v. Proctor*, No. 2:05-cv-1097, 2021 U.S. Dist. LEXIS 160454, at *3 (S.D. Ohio Aug. 25, 2021). In *Ohio Midland*, the court acknowledged that continued foot-dragging by one party was the reason the dispute was in front of the master, which suggested the fees should be allocated to that party alone. *Id.* at *4–6. However, due to that party's financial condition, the court assigned a small percentage (15%) of the fees to the opposing party and split the remainder of the costs between the two remaining parties (the primarily responsible party and another entity). *Id.* at *6–7. An analogous allocation would work equally well here with SDC paying 15% of the Special Master's fees relating to Singer's subpoena, and the remaining 85% of the costs split between Singer himself and Plaintiffs in whatever division the Court deems just.

If the Court is disinclined to disrupt the current 50/50 split of the Special Master's fees, it should not be SDC that covers Singer's share of those costs. The facts outlined above make it unlikely that Singer is acting alone. Singer's lawyer has acknowledged that he has been in regular communication with the *Ciccio* Plaintiffs' lawyers, and it appears that he may be acting on their behalf.

The close relationship between Singer and Rick Stone suggests as much as well. Singer is the President of an accounting practice that services PBIRG, a company that Stone founded and of which Stone now serves as President. [*Ciccio* ECF #370-1 ¶¶ 3-4.] Singer also serves as PBIRG's Club Administrator. [*Id.* ¶ 2.] Singer sent his email to Dr. Cohen from his PBIRG email account,

12

although he contends that Stone neither instructed Singer to send that email nor reviewed it beforehand. [*Id.* ¶ 9.] Notwithstanding that contention, Singer claims that the vast majority of documents responsive to SDC's subpoena are privileged because Singer was serving the *Ciccio* Plaintiffs' lawyers as an unpaid paralegal. In other words, Singer is a paid agent of one of the Plaintiffs' lawyer's side businesses, but he now claims that he is an unpaid arm of that lawyer's law practice, too.

This unsupportable privilege claim does not benefit Singer; it benefits Plaintiffs. After all, it is the Plaintiffs themselves who own the privilege—not their counsel, and not a faux paralegal lodging a baseless privilege claim at the behest of Plaintiffs' lawyers. Why Singer would agree to incur fees fighting this losing position is a mystery that likely will remain unsolved until Singer fully complies with SDC's subpoena and sits for his deposition. Further, Singer has nothing to lose by responding in full to SDC's subpoena. Not so for Plaintiffs. Evidence clarifying Singer's role in this case is a significant risk to them, as it threatens to offer further evidence that the *Ciccio* case is not a matter of orthodontists seeking redress for a perceived wrong, but instead lawyer-driven litigation of the worst kind.

Ultimately, both the relationship between Singer and Plaintiffs and the strong circumstantial evidence that Singer is doing their counsel's bidding by resisting SDC's subpoena offer a strong reason to require the *Ciccio* Plaintiffs to pay at least half of the Special Master's fees incurred resolving SDC's motion to compel.

IV. **CONCLUSION**

The factual and procedural history relating to SDC's subpoena of Singer reveal a plain truth: Singer is a party, whether to the underlying *Ciccio* action or to his own subpoena, subject to the obligations of complying with discovery. For this and the foregoing reasons, SDC respectfully requests that the Court issue an Order clarifying that Singer is responsible for at least half of any

13

of the Special Master's fees relating to Singer's own compliance with SDC's subpoena or, in the alternative, that Plaintiffs' must reimburse Singer's share of the Special Master's fees.

Respectfully submitted,

*/s/ Michael D. Meuti*
John R. Jacobson (BPR 14365)
Elizabeth O. Gonser (BPR 26329)
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
Telephone: (615) 320-3700
Facsimile: (615) 320-3737
jjacobson@rjfirm.com
egonser@rjfirm.com

Hannah M. Stowe
Matthew J. Langely
Benesch, Friedlander, Coplan & Aronoff, LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
hstowe@beneschlaw.com
mlangely@beneschlaw.com

Michael D. Meuti
Benesch, Friedlander, Coplan & Aronoff, LLP
200 Public Square, Suite 2300
Cleveland, Ohio 44114
mmeuti@beneschlaw.com
afiorella@beneschlaw.com
jbedell@beneschlaw.com

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the below via the Court's ECF Filing System this 4th day of January 2023.

Alan D. Lash
Lash & Goldberg LLP
100 SE 2nd Street, Suite 1200
Miami, FL 33131-2100
alash@lashgoldberg.com

Jonathan E. Siegelaub
Lash & Goldberg LLP
2500 Weston Road, Suite 220
Fort Lauderdale, FL 33331
jsiegelaub@lashgoldberg.com

Michael D. Meuti
Benesch, Friedlander, Coplan and Aronoff, LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
mmeuti@beneschlaw.com

Hannah M. Stowe
Matthew J. Langley
Benesch, Friedlander, Coplan and Aronoff, LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
hstowe@beneschlaw.com
mlangey@beneschlaw.com

Joseph G. Galardi
Atherton Galardi Mullen & Reeder PA
224 Datura Street, Suite 815
West Palm Beach, FL 33401
jgalardi@athertonlg.com

Charles B. Lee
Miller & Martin PLLC
Suite 1200, Volunteer Building
832 Georgia Avenue
Chattanooga, TN 37402
chuck.lee@millermartin.com

With courtesy electronic copies to:

1. Counsel of record in *Ciccio v. SmileDirectClub, LLC*, Case No. 3:19-cv-00845 (M.D. Tenn.); and

2. Samuel P. Funk
   Sims Funk, PLC
   3322 West End Avenue, Suite 200
   Nashville, TN 37203
   sfunk@simsfunk.com
   *Special Master in Ciccio*

/s/ Michael D. Meuti